United States District Court
Southern District of Texas
**ENTERED**
July 26, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DARYL HEROD, | § | |
| Plaintiff. | § § § | |
| V. | § § | CIVIL ACTION NO. 4:23-cv-04465 |
| DMS SOLUTIONS INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me in this Fair Labor Standards Act ("FLSA") case is a Motion to Compel Arbitration and Dismiss Judicial Proceedings or, Alternatively, Strike Collective Allegations filed by Defendant DMS Solutions Inc. ("DMS"). Dkt. 23. I recommend the Motion to Compel Arbitration be **DENIED**.

## BACKGROUND

Plaintiff Daryl Herod ("Herod") worked for DMS from April 2022 until October 2023. In November 2023, Herod filed this lawsuit, alleging that "DMS misclassified Herod as an independent contractor to avoid paying him overtime wages." Dkt. 1 at 2. "Herod brings this collective action on behalf of himself and all other similarly situated workers who worked for, or on behalf of, DMS who were paid under its day rate pay scheme." *Id.*

DMS has moved to compel arbitration or, alternatively, to strike the collective allegations. DMS notes that on April 5, 2022, it entered into an Independent Contractor Agreement ("Agreement") with DN Herod Consulting LLC ("DNHC"). Herod, DNHC's Owner, signed the Agreement on behalf of DNHC. According to DMS, the Agreement contains a broad arbitration provision ("Section 14") that requires Herod to submit to arbitration:

> 14.  **Parties Will Arbitrate**: All claims, disputes or controversies, including but not limited to . . . reimbursement, and all payment and/or entitlement disputes, arising out of or relating to this

> Agreement, the Services and any Service Order executed pursuant thereto or the Services performed shall be finally decided by resort of either Party to bilateral arbitration (each Party, solely in their capacity as Company and Contractor) utilizing a single arbitrator in accordance with the applicable Rules then in effect by the American Arbitration Association.

Dkt. 23-1 at 11–12. Herod concedes (or at least, does not dispute) that his claims would otherwise fall within Section 14's scope. According to Herod, however, *he* never agreed to arbitrate with DMS. Rather, it was his company, DNHC, that agreed to arbitrate with DMS. Thus, Herod contends that DMS cannot prove it has an arbitration agreement with him as an individual. For the reasons explained below, I agree with Herod.

### FEDERAL ARBITRATION ACT ("FAA"), 9 U.S.C. §§ 1–16

The FAA requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract. *See Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000) ("The FAA's primary goal is to place agreements to arbitrate on the same footing as other contracts." (quotation omitted)). Specifically, the FAA provides that:

> A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

There is a two-step analysis for adjudicating a motion to compel arbitration. *See Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). First, I must determine "whether the parties agreed to arbitrate the dispute." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). "Two questions guide this analysis: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?" *Id.* (quotation omitted). In light of the strong federal policy favoring arbitration, the Supreme Court has instructed that "any doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). This presumption does not apply, however, to the determination of whether a valid agreement to arbitrate exists between the parties. That inquiry is committed to traditional principles of state contract law. *See Klein*, 710 F.3d at 237.[1] Here, Texas law applies.

## ANALYSIS

### A. HEROD IS NOT A PARTY TO THE ARBITRATION AGREEMENT.

DMS argues that the Agreement's arbitration provision requires Herod to submit any dispute with DMS to binding arbitration. It is undisputed that Herod signed the Agreement. Yet, Herod contends he signed the Agreement only on behalf of DNHC. Thus, according to Herod, DMS has no contract with him—DMS's only agreement is with DNHC. I agree with Herod.

"Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003). The Supreme Court has held that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation omitted). "In deciding whether an agent is personally liable on a contract the agent signed, both the signature and the body of the contract should be considered." *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 454 (Tex. App.—Austin 2023, no pet.).

In Texas, "the principal's name followed by the agent's name preceded by a preposition such as 'by' or 'per' will, 'in the absence of a contrary manifestation in the document,' create an inference that the principal and not the agent is a party." *Id.* at 455 (quoting RESTATEMENT (SECOND) OF AGENCY § 156 cmt. a. (1958)). Where, however, "the agent merely adds the word 'agent' to his signature in a

---

[1] The second step in the analysis—"determining the scope of a valid arbitration agreement"—is not at issue in this case. *Klein*, 710 F.3d at 237.

document, not otherwise manifesting that he is not a party, it is inferred that he is a party to the transaction." RESTATEMENT (SECOND) OF AGENCY § 156 cmt. b.

Here is Herod's signature to the Agreement:

| Contractor<br>Contractor or Contractor Company Name | DMS Solutions, Inc. |
|---|---|
| By: *Daryl Herod* | By: *Guy Baldwin* |
| Name: Daryl Herod | Name: Guy Baldwin |
| Title: Owner | Title: Director |

Dkt. 23-1 at 12. The preposition "By," which precedes Herod's signature and follows "Contractor" (defined by the Agreement as DNHC), creates the inference that DNHC is the principal and Herod merely its agent. Under Texas law, "signing a contract in a representative capacity does not bind the agent personally to the contract." *Elgohary v. Herrera*, 405 S.W.3d 785, 790–91 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Therefore, "the fact that [DNHC] entered into the contract with [DMS], thereby agreeing to the arbitration clause, did not cause [DNHC's agent, Herod], to be personally bound by that agreement, even though [Herod] executed the contract on behalf of [DNHC]." *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011) (applying Texas law).

DMS attempts to distinguish *Covington* and *Elgohary*, arguing they "are easily distinguishable, because in both cases the plaintiffs did not allege the corporate officers played any role in performing the work under dispute. Furthermore, the language of the arbitration clauses did not expressly cover work performed by employees or agents of the corporate entities." Dkt. 31 at 9. Yet, DMS offers me no case law demonstrating why that matters. I am unwilling to rule contrary to the plain language of *Covington*'s binding precedent without some legal justification—as opposed to mere argument—for why *Covington* does not apply. Thus, the distinction is one without a difference.

Having established that Herod signed the Agreement only as DNHC's agent, and is therefore not a party to the Agreement, I turn to DMS's argument that Herod

4

should nevertheless be bound to the Agreement under the theory of intertwined claims estoppel.

### B.     INTERTWINED CLAIMS ESTOPPEL DOES NOT APPLY.

"Federal courts have recognized six theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). "Intertwined claims estoppel involves compelling arbitration when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (cleaned up). Although "no decision of the Texas Supreme Court precisely recognizes intertwined claims estoppel," *id.* at 611, the Fifth Circuit has made an *Erie* guess and "predicted [the Texas Supreme Court] would adopt this estoppel formulation." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018). Thus, I will assume that Texas courts would recognize intertwined claims estoppel.

Intertwined estoppel requires (1) "a dispute intertwined with the contract," and (2) "a relationship between the parties that developed in a manner that makes it unfair not to compel arbitration." *Id.* This certainly *seems* like the type of case that merits the application of intertwined claims estoppel. Herod is the *sole* owner and operator of DNHC. There is no one other than Herod with whom DMS could interact concerning the Agreement. Thus, Herod has a close relationship with DNHC, "a signatory to a contract with an arbitration agreement." *Id.*

As to the second prong, Herod can only establish his employment relationship with DMS by pointing to the Agreement. Indeed, Herod's work for DMS began in the very same month that he signed the Agreement: April 2022. It seems backward indeed to allow Herod to claim that DMS owes him wages for

5

work performed pursuant to the Agreement while simultaneously allowing Herod to escape arbitration under the Agreement.

Alas, binding Fifth Circuit precedent prevents me from applying intertwined claims estoppel here. "The 'intertwined claims' theory governs motions to compel arbitration when a *signatory-plaintiff* brings an action against a *nonsignatory-defendant* asserting claims dependent on a contract that includes an arbitration agreement that the defendant did not sign." *Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017) (emphasis added). But, as established above, Herod is *not* a signatory-plaintiff. Moreover, DMS is not a nonsignatory-defendant. Intertwined claims estoppel "does not govern the present case, where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff." *Id.* The plain language of this binding precedent again forecloses the result here.

\* \* \*

Having established that Herod is not bound to the Agreement under the intertwined claims estoppel theory, I must conclude that there is not a valid, enforceable arbitration agreement between DMS and Herod. Accordingly, I do not reach the question of whether the claim at issue is covered by the Agreement. Nor do I reach DMS's argument that Herod's collective action allegations should be stricken from the Complaint. The Class Action and Collective Action Waiver that DMS seeks to enforce is part and parcel of the same Agreement that I have already determined is not valid and enforceable as to Herod. *See* Dkt. 23-1 at 12.²

---

² The three cases DMS cites in support of its argument that Herod should be bound to the Class Action and Collective Action Waiver in the Agreement are all cases in which the plaintiff(s) had a valid and enforceable agreement, which is not the case here. *See Layton v. Mainstage Mgmt., Inc.*, No. 3:21-cv-1636, 2022 WL 11398523, at \*3 (N.D. Tex. Oct. 18, 2022) (holding that plaintiffs "waived their rights to pursue their FLSA claims as a collective action" where "[b]oth plaintiffs signed the overall agreement [in their individual capacity] and initialed the page with [the waiver] language"); *Bock v. Salt Creek Midstream LLC*, No. CV 19-1163, 2020 WL 5640669, at \*8–10 (D.N.M. Sept. 22, 2020) (holding plaintiffs to the class action waiver that each was required to execute as a condition of their employment); *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 685 (S.D. Tex. 2013) (holding that "the Court need not decide if the 'Class Action

## CONCLUSION

For the reasons explained above, I recommend the court **DENY** DMS's Motion to Compel Arbitration (Dkt. 23).

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED on this 26th day of July 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

Waiver' . . . applies to an FLSA collective action, because . . . broader language in the employment application applies to FLSA cases brought collectively").