UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARYL HEROD, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-04465 |
| | § | |
| DMS SOLUTIONS INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

This is a Fair Labor Standards Act ("FLSA") case filed by Plaintiff Daryl Herod. Pending before me is a Renewed Motion to Compel Arbitration and Dismiss Judicial Proceedings or, Alternatively, Strike Collective Allegations filed by Defendant DMS Solutions Inc. ("DMS").[1] Dkt. 57. Having reviewed the parties' briefing, the record, and the applicable law, I grant the motion.[2]

---

[1] DMS's request to dismiss this lawsuit does not make its motion dispositive. As DMS itself notes, I am obligated to stay this case pending arbitration if Herod so requests. *See* Dkt. 57 at 25 (citing *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024)). Moreover, I have discretion to stay these proceedings pending arbitration, and "[a]n arbitration order entering a stay . . . is not an appealable final order." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003).

[2] Since taking the bench in 2018, I have issued a Memorandum and Recommendation for every motion to compel arbitration that has been referred to me, including the first motion to compel arbitration in this case. *See Herod v. DMS Sols. Inc.*, No. 4:23-cv-04465, 2024 WL 3558385, at *1 (S.D. Tex. July 26, 2024). Recently, however, I have reconsidered my position and determined that I should instead rule on referred motions to compel arbitration by Opinion and Order. Although the Fifth Circuit has never reached the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion, *see Lee v. Plantation of La., L.L.C.*, 454 F. App'x 358, 359 n.3 (5th Cir. 2011), I previously said that I thought the appellate court would hold that a motion to compel arbitration is dispositive. *See Allen v. W&T Offshore, Inc.*, No. 3:18-cv-00305, 2019 WL 2996695, at *1 n.1 (S.D. Tex. July 1, 2019). I reached that view because the Fifth Circuit, in holding that a motion to remand is a dispositive motion, utilized reasoning that I felt was equally applicable to a motion to compel arbitration. *See Davidson v. Ga.-Pac., L.L.C.*, 819 F.3d 758, 764 (5th Cir. 2016) (finding that a motion to remand "is dispositive insofar as proceedings in the federal court are concerned" and thus is the functional equivalent

## BACKGROUND

Herod worked for DMS from April 2022 until October 2023. In November 2023, Herod filed this lawsuit, alleging that "DMS misclassified Herod as an independent contractor to avoid paying him overtime wages." Dkt. 1 at 2. "Herod brings this collective action on behalf of himself and all other similarly situated workers who worked for, or on behalf of, DMS who were paid under its day rate pay scheme." *Id.*

On April 5, 2022, DMS entered into an Independent Contractor Agreement ("Agreement") with DN Herod Consulting LLC ("DNHC"). Herod, DNHC's Owner, signed the Agreement on DNHC's behalf. The Agreement contains a broad arbitration provision ("Section 14") that requires the parties to submit any disputes arising out of the Agreement to arbitration:

> 14. **Parties Will Arbitrate**: All claims, disputes or controversies, including but not limited to . . . reimbursement, and all payment and/or entitlement disputes, arising out of or relating to this Agreement, the Services and any Service Order executed pursuant thereto or the Services performed shall be finally decided by resort of either Party to bilateral arbitration (each Party, solely in their capacity as Company and Contractor) utilizing a single arbitrator in accordance with the applicable Rules then in effect by the American Arbitration Association.

---

of an order of dismissal" (citation omitted)). Upon further reflection, I am now confident that a motion to compel arbitration is a non-dispositive motion, and the Fifth Circuit will reach that same conclusion when it ultimately confronts the issue. Unlike a ruling granting a motion to remand, which generally sends the case back to state court without any right to appeal, "[e]ven if [a motion to compel arbitration] is granted, the court still retains authority to dissolve the stay [pending arbitration] or, after the arbitration has run its course, to make orders with respect to the arbitral award." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010). For this reason, at least two circuit courts have observed that "a motion to compel arbitration is a non-dispositive motion." *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019); *see also V.I. Water & Power Auth. v. Gen. Elec. Int'l. Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation."). This reasoning makes sense. Accordingly, I will no longer treat motions to compel arbitration as dispositive. Rather, I will rule on these non-dispositive motions by Opinion and Order.

Dkt. 57-1 at 11. On March 21, 2024, DMS moved to compel arbitration or, alternatively, to strike the collective allegations contained in the Complaint. *See* Dkt. 23.

Herod implicitly conceded then, and still does not dispute, that his claims fall within Section 14's scope. According to Herod, however, *he* never personally agreed to arbitrate with DMS. Rather, his company, DNHC, agreed to arbitrate with DMS. *See* Dkt. 28 at 12. Thus, Herod contends that DMS cannot prove it has an arbitration agreement *with him*.

DMS countered for the first time in its reply brief that, even if he is not personally bound to the agreement, Herod is bound under the theory of intertwined claims estoppel. *See* Dkt. 31 at 11. Herod moved to strike DMS's belated argument. *See* Dkt. 32. I denied that motion, but allowed Herod to file a surreply, *see* Dkt. 37, which he did. *See* Dkt. 38. On July 26, 2024, I issued a Memorandum and Recommendation, finding that binding Fifth Circuit precedent prevented the court from applying intertwined claims estoppel and recommending that DMS's motion to compel arbitration be denied. *See* Dkt. 39.

DMS timely objected to my recommendations and Herod replied. In its reply, DMS raised for the first time the argument that DNHC has been inactive since August 2021, approximately eight months *before* Herod signed the Agreement on DNHC's behalf. DMS argued that because DNHC was without legal status when Herod signed the Agreement, Herod is personally bound by the Agreement. *See* Dkt. 46 at 2. On September 10, 2024, Judge George C. Hanks, Jr. adopted my July 26, 2024 Memorandum and Recommendation, "declin[ing] to consider the newly proffered legal argument submitted with [DMS]'s Reply in support of its Objections." Dkt. 53 at 2.

On September 20, 2024, DMS asked to file a second motion to compel arbitration. *See* Dkt. 56. I issued a minute entry that same day giving DMS leave to file a second motion to compel arbitration and stating: "I am not, at this time,

deciding (1) whether a Defendant is legally entitled to file a second motion to compel arbitration; or (2) the merits of the underlying motion."

On October 7, 2024, DMS filed its Renewed Motion to Compel Arbitration, arguing that Herod is personally bound by the Agreement because DNHC lacked corporate privileges at the time Herod signed the Agreement. *See* Dkt. 57. Two days later, DMS asked to stay discovery pending a ruling on its renewed motion. *See* Dkt. 58. I granted DMS's motion to stay discovery on October 21, 2024. *See* Dkt. 61. In doing so, I brought the parties' attention to the Fifth Circuit's October 1, 2024 decision in *Cure & Associates, P.C. v. LPL Financial LLC*, in which the Fifth Circuit observed that "a nonsignatory plaintiff can be compelled to arbitrate a claim [under Texas law] when the claim is itself based on, or inextricably intertwined with, the contract containing the arbitration clause." 118 F.4th 663, 670 (5th Cir. 2024) (cleaned up). I asked the parties to "address[] this recent development in the case law in their briefing on DMS's Renewed Motion to Compel Arbitration," and provided them additional time and pages to do so. Dkt. 61 at 3.

In his response to DMS's renewed motion, Herod maintains that: (1) he never personally agreed to arbitrate with DMS; (2) DMS waived any argument regarding DNHC's corporate privileges and, even if not waived, such arguments are unavailing; (3) the Agreement has been terminated, along with the arbitration provision; and (4) *Cure* does not apply to this case. DMS responds that: (1) any waiver was restricted to its first motion to compel arbitration and does not apply now; (2) DNHC lacked corporate privileges when Herod signed the Agreement and has not been reinstated; (3) the Agreement's arbitration provision continues beyond the Agreement's termination; and (4) *Cure* applies and this court should compel Herod to arbitration under intertwined claims estoppel. I will address each of these arguments in turn.

## FEDERAL ARBITRATION ACT ("FAA"), 9 U.S.C. §§ 1–16

The FAA requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract. *See Specialty Healthcare Mgmt.,*

*Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000) ("The FAA's primary goal is to place agreements to arbitrate on the same footing as other contracts." (quotation omitted)). Specifically, the FAA provides that:

> A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

There is a two-step analysis for adjudicating a motion to compel arbitration. *See Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). First, I must determine "whether the parties agreed to arbitrate the dispute." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). "Two questions guide this analysis: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?" *Id.* (quotation omitted). In light of the strong federal policy favoring arbitration, the Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). This presumption does not apply, however, to the determination of whether a valid agreement to arbitrate exists between the parties. That inquiry is committed to traditional principles of state contract law. *See Klein*, 710 F.3d at 237.[3] Here, Texas law applies.

## ANALYSIS

**A.    DMS'S RENEWED MOTION TO COMPEL ARBITRATION IS PROPER.**

When I allowed DMS to file a renewed motion to compel arbitration, I assumed that we would spill much ink discussing the propriety of such a motion.

---

[3] The second step in the analysis—"determining the scope of a valid arbitration agreement"—is not at issue in this case. *Klein*, 710 F.3d at 237.

DMS certainly seems to have thought the same, devoting approximately four pages to the topic in its opening brief. *See* Dkt. 57 at 13–17. DMS's argument centered on the Fourth Circuit's decision in *Dillon v. BMO Harris Bank, N.A.*, in which the appellate court observed that "no authority—not the FAA, the Federal Rules of Civil Procedure, or any other source of law of which we are aware—limits a party to only one motion under §§ 3 or 4 of the FAA." 787 F.3d 707, 715 (4th Cir. 2015). Although not binding precedent, I found *Dillon*'s reasoning persuasive and eagerly awaited Herod's response.

And then . . . crickets.

Herod's entire response to whether this court should entertain DMS's renewed motion is this: "And while DMS asserts it is entitled to file a second motion to compel arbitration, it offers no precedent holding such a motion allows it to revive a waived issue." Dkt. 65 at 7. Herod failed to even acknowledge *Dillon*, much less address DMS's arguments as to why its renewed motion is proper. The only takeaway from Herod's statement that DMS "offers no precedent holding such a motion allows it to revive a waived issue," *id.*, is that Herod concedes the propriety of a renewed motion generally. Accordingly, I will not devote any more time to the topic and will instead address Herod's arguments regarding waiver.

**B.   DMS DID NOT WAIVE ITS ARGUMENTS CONCERNING DNHC'S LACK OF CORPORATE PRIVILEGES AT THE TIME HEROD SIGNED THE AGREEMENT.**

Herod contends that this court has already determined that any argument concerning DNHC's lack of corporate privileges is forever waived. It is true that Judge Hanks declined to consider arguments about DNHC's inactive status as waived when adopting my July 26, 2024 Memorandum and Recommendation. But Herod is incorrect that such waiver necessarily applies to subsequent motions. Tellingly, Herod cites no authority for the proposition that an argument deemed waived as to one motion cannot properly be put before the court on a subsequent motion. Rather, "Judge [Hanks]'s conclusion that the [inactive corporation] argument raised in [DMS's reply to its objections] was 'waived' can only be read to

mean that it would not be considered for purposes *of that motion.*" *Calder v. SBC Pension Ben. Plan*, 549 F. Supp. 2d 824, 837 (W.D. Tex. 2008) (emphasis added).

C.  **HEROD IS PERSONALLY BOUND BY THE AGREEMENT.**

This court has already held that "Herod signed the Agreement only as DNHC's agent, and is therefore not a party to the Agreement." *Herod v. DMS Sols. Inc.*, No. 4:23-cv-04465, 2024 WL 3558385, at *2 (S.D. Tex. July 26, 2024). Implicit to that holding, however, was the assumption that DNHC was a valid corporate entity at the time Herod signed the Agreement. DMS argues that it was not and therefore Herod is personally bound to the Agreement. I concur.

It is undisputed that "DNHC was forfeited in 2021 'pursuant to Section 171.309 of the Texas Tax Code.'" Dkt. 65 at 19 (quoting Dkt. 46-1 at 4). Texas law permits an entity terminated under the Tax Code to continue in existence for three years post-termination for only five purposes:

(1) prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity;
(2) permitting the survival of an existing claim by or against the terminated filing entity;
(3) holding title to and liquidating property that remained with the terminated filing entity at the time of termination or property that is collected by the terminated filing entity after termination;
(4) applying or distributing property, or its proceeds, as provided by Section 11.053; and
(5) settling affairs not completed before termination.

TEX. BUS. ORGS. CODE ANN. § 11.356(a). Entering into contracts is not among the five limited purposes for which an entity continues after termination. Rather, "[a] terminated filing entity may *not* continue its existence for the purpose of continuing the business or affairs for which the terminated filing entity was formed unless the terminated filing entity is reinstated under [the Business Organizations Code] or the Tax Code." *Id.* § 11.356(b) (emphasis added).

"Generally, one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, is personally

7

liable on the contract." 12 Williston on Contracts § 35:39 (4th ed. 2024); *see also* RESTATEMENT (THIRD) OF AGENCY § 6.04(a) (2006) ("[A] person who purports to act as an agent becomes a party to a contract made on behalf of the purported agent's purported principal when the purported agent knows or has reason to know that the purported principal does not exist at the time of the contract or lacks capacity to be a party to a contract."). Texas courts follow this principle. *See, e.g.*, *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438 (Tex. App.—Dallas 2010, no pet.) (holding that agent who "purported to sign" lease on behalf of DBA entity "bound only himself"); *Stacy v. Energy Mgmt. Grp. Ltd.*, 734 S.W.2d 149, 150 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("[A]n agent who executes a contract on behalf of a fictitious principal is also personally liable on the contract for failure to accurately disclose his principal."); *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 436 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (discussing "the general rule that one who contracts as an agent in the name of . . . a principal without legal status or existence . . . renders himself personally liable on those contracts").

Herod argues "that where an entity's forfeiture occurs pursuant to . . . Section 171.309 of the Texas Tax Code and its reinstatement is under the Tax Code, it '[i]s not a terminated entity . . . and therefore not subject to the limitations' found in . . . the Texas Business Organizations Code." Dkt. 65 at 19 (quoting *G Force Framing LLC v. MacSouth Forest Prods., L.L.C.*, No. 05-20-00835-cv, 2022 WL 500027, at *7 (Tex. App.—Dallas Feb. 18, 2022, no pet.)). That is all fine and good but, unlike G Force, there is no evidence in the record to suggest that DNHC has been reinstated. "As a terminated entity, [DNHC] no longer existed" when Herod signed the Agreement. *Donica Grop., LP v. Thompson Excavating, Inc.*, No. 05-19-00235-cv, 2020 WL 57340, at *3 (Tex. App.—Dallas Jan. 6, 2020, no pet.). Even if DNHC had been recently restated, the law is clear: "[R]einstatement of a filing entity's certificate of formation after its forfeiture has no effect on any issue of the personal liability of the governing persons, officers, or agents of the filing entity during the period between forfeiture and reinstatement of the certificate of

8

formation." TEX. BUS. ORGS. CODE § 11.254(b). Accordingly, I find that Herod is personally bound to the Agreement.

### D. THE ARBITRATION PROVISION SURVIVES TERMINATION.

Herod argues that, even if he is a party to the Agreement, he terminated the Agreement, and Section 14 does not survive termination because it is not one of the enumerated sections in the survivability clause of Section 6, the Agreement's termination provision.[4] True as that may be, it is not enough to show that Section 14 terminates with the Agreement.

The United States Supreme Court has held that "where the dispute is over a provision of [an] expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977). "Consequently, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship." *Id.* In other words, "arbitration clauses are presumed to govern grievances under the [parties'] agreement that occur *after* the expiration of the agreement, unless *the arbitration clause* states otherwise." *Seafarers Intern. Union of N. Am. v. Nat'l*

---

[4] Section 6 provides as follows:
> Term of Agreement: This Agreement shall be for an initial term of one year from the Effective Date. Upon expiration of the initial term, this Agreement shall continue on a month-to-month basis; provided, however, either Party may terminate this Agreement at any time without cause during the initial term or thereafter on not less than 30 days' prior written notice of such termination. Any such termination shall not affect any rights or obligations which have accrued under this Agreement. For the avoidance of doubt, rights and obligations accruing under any outstanding Service Orders, including Contractor's obligations to perform as agreed pursuant to such Service Orders, shall not be affected by any such termination. Notwithstanding the foregoing, the terms of Sections 2, 3, 4, 5, 6, 7, 10, 13 and 15 shall survive the termination, cancellation or completion of this Agreement and any Service Orders.

Dkt. 57-1 at 9.

*Marine Servs., Inc.*, 820 F.2d 148, 153 (5th Cir. 1987) (emphasis added), *abrogated on other grounds by Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190 (1991).

Herod contends that the maxim *expressio unius est exclusio alterius* demonstrates that Section 14 terminated with the Agreement. That maxim "instructs that the expression in a contract of one or more things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed." *Oxy USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 285 (Tex. App.—Corpus Christi 2005, pet. denied) (quotation omitted). Under this maxim, Herod contends that the *inclusion* of Sections 2, 3, 4, 5, 6, 7, 10, 13, and 15 in the survivability clause of Section 6 means that the *exclusion* of Section 14 is a clear implication that Section 14 does not survive termination.

In any context other than this one, that might be a powerful argument. Tellingly, however, the case that Herod cites—*Oxy USA*—has nothing to do with arbitration. Rather, courts throughout the Fifth Circuit routinely hold that "absent a showing that the arbitration provision, *itself*, provides that it does not survive termination, . . . arbitration provisions are still enforceable [post-termination] where it involves 'disputes arising under the contract.'" *Sparrow v. EK Real Est. Servs., NY, LLC*, No. 4:22-cv-00046, 2023 WL 3035359, at *9 (E.D. Tex. Feb. 9, 2023) (quoting *Athas Health LLC v. Giuffre*, No. 3:17-cv-300, 2017 WL 8809604, at *4 (N.D. Tex. Oct. 12, 2017)). Because nothing *in Section 14* expressly negates or clearly implies that the parties intended it to terminate with the Agreement, Section 14 survives the Agreement's termination.

E. **EVEN IF HEROD WAS NOT PERSONALLY BOUND BY THE AGREEMENT (HE IS), EQUITY DEMANDS HE BE HELD TO IT ANYWAY.**

Under the theory of intertwined claims estoppel, "non-signatories can successfully compel arbitration when (1) they have a close relationship with a signatory to a contract with an arbitration agreement and (2) the claims are intimately founded in and intertwined with the underlying contract obligations."

*Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018) (quotation omitted). I have already observed that:

> This certainly *seems* like the type of case that merits the application of intertwined claims estoppel. Herod is the *sole* owner and operator of DNHC. There is no one other than Herod with whom DMS could interact concerning the Agreement. Thus, Herod has a close relationship with DNHC, a signatory to a contract with an arbitration agreement.

*Herod*, 2024 WL 3558385, at *3 (quotation omitted). Yet, despite that observation, I found that "binding Fifth Circuit precedent prevents me from applying intertwined claims estoppel here." *Id.* That precedent was the Fifth Circuit's decision in *Janvey v. Alguire*, in which the Fifth Circuit said that intertwined claims estoppel "does not govern the present case, where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff." 847 F.3d 231, 242 (5th Cir. 2017).

Yet, the Fifth Circuit recently observed that "a nonsignatory plaintiff can be compelled [under Texas law] to arbitrate a claim when the claim is itself based on, or inextricably intertwined with, the contract containing the arbitration clause." *Cure*, 118 F.4th at 669 (cleaned up). DMS contends that *Cure*'s observation about intertwined claims estoppel under Texas law is not at odds with *Janvey* because:

> *Janvey*'s single-sentence statement that intertwined-claims estoppel does not apply "where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff" relied on *Bridas SAPIC v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003). The *Bridas* case, in turn, relied on federal substantive law in deciding whether or not intertwined claims estoppel applied to the facts before it. Neither *Janvey* or *Bridas* addressed intertwined-claims estoppel *under Texas law* or predicted whether Texas state courts would recognize intertwined claims estoppel as a basis to compel a nonsignatory to arbitration.

Dkt. 66 at 17–18. I find this argument persuasive and would otherwise recommend ordering Herod to arbitration under the theory of intertwined claims estoppel.

11

That is unnecessary, however, because Herod is personally bound to the Agreement.[5]

## CONCLUSION

I find that there is a valid, enforceable arbitration agreement between DMS and Herod. I do not reach the question of whether Herod's collective action allegations should be struck from the Complaint. Although the parties argue about whether this court or the arbitrator should determine if Herod's claims fall within

---

[5] Herod admonishes this court for requesting briefing on *Cure*'s applicability. According to Herod, "it is not the role of the Court to raise issues foregone by a party." Dkt. 65 at 29. Herod offers some cherry-picked quotes from United States Supreme Court decisions to support his contention that this court's "presentation of [*Cure*'s applicability] at this stage places it in the position of advocate rather than an adjudicator." *Id.* at 30. It is worth examining those cases to see just how wrong Herod is to suggest that it was improper for a court of first instance, not an appellate court, to ensure it gets the law right.

In *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020), the Supreme Court held that the Ninth Circuit Court of Appeals' departure from the party presentation principle constituted an abuse of discretion where a Ninth Circuit panel overtook the defendant's appeal by requesting amicus briefs from three organizations and affording those non-parties more time before the panel than Sineneng-Smith's own counsel. In that same opinion, however, the Supreme Court observed that "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate." *Id.* at 376. Indeed, even the Supreme Court has ordered briefing on issues not directly presented but raised in the lower courts. *See id.* at 381–82. Here, "the question [of whether intertwined claims estoppel should bind Herod to the Agreement] was not interjected into the case for the first time by [this court]." *Id.* Rather, this court simply sought to ensure that its prior holding was correct in light of recent developments in the case law. Nor do this court's actions here remotely resemble the actions of the Eight Circuit Court of Appeals in *Greenlaw v. United States*, 554 U.S. 237 (2008), in which an Eight Circuit panel sua sponte ordered the district court to add 15 years to Greenlaw's sentence to conform to the statutory requirement, despite the fact that the United States did not appeal or cross-appeal.

This court is free to "revisit prior decisions of its own in any circumstance." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (cleaned up). Moreover, "it is well-settled that a district court may grant summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770–71 (5th Cir. 2000) (quotation omitted). "The broad rule is that a district court may dismiss a claim on its own motion as long as the procedure employed is fair." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (quotation omitted). Accordingly, there is nothing untoward about this court requesting briefing from the parties—and affording them extra time and pages for such briefing—on an issue this court had already addressed.

the Agreement's scope, Herod has never contested that the Agreement would otherwise cover his claims—he has only ever disputed that he is a party to the Agreement. Accordingly, I grant DMS's Renewed Motion to Compel Arbitration (Dkt. 57). This case is stayed and administratively closed pending arbitration.

    SIGNED on this 25th day of November 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE