United States District Court
Southern District of Texas
**ENTERED**
July 15, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DARYL HEROD, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-04465 |
| | § | |
| DMS SOLUTIONS INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

On November 25, 2024, I ordered Plaintiff Daryl Herod and Defendant DMS Solutions, Inc. ("DMS") to arbitration after finding "that there is a valid, enforceable arbitration agreement between DMS and Herod." Dkt. 67 at 12. That agreement provides in relevant part:

> 14.  **Parties Will Arbitrate**: All claims, disputes or controversies, including but not limited to . . . reimbursement, and all payment and/or entitlement disputes, arising out of or relating to this Agreement, the Services and any Service Order executed pursuant thereto or the Services performed shall be finally decided by resort of either Party to ***bilateral arbitration*** (each Party, solely in their capacity as Company and Contractor) utilizing a single arbitrator in accordance with the applicable Rules then in effect by the American Arbitration Association ["AAA"].

Dkt. 57-1 at 12 (emphasis added).

DMS asks me to either clarify that the November 25, 2024 order forecloses collective arbitration or, in the alternative, enjoin the collective arbitration action that Herod began before the AAA. *See* Dkt. 71 at 5. This court lacks jurisdiction to enjoin the non-party AAA. But I need not reach that alternative request for relief because this court "possesses the inherent procedural power" to clarify its November 25, 2024 order. *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A 1981).

When I found "that there is a valid, enforceable arbitration agreement between DMS and Herod," Dkt. 67 at 12, I necessarily found, by the terms of that agreement, that there is a valid, enforceable agreement to resort "to bilateral arbitration." Dkt. 57-1 at 12. The phrase "bilateral arbitration" is—as a matter of plain English, common sense, and law—incompatible with collective arbitration, irrespective of (1) whether the class and collective action waiver in the parties' agreement was terminated; or (2) whether the parties delegated collective action arbitrability to an arbitrator. Thus, I do not reach those issues.

Merriam-Webster defines "bilateral" as "affecting reciprocally two nations or parties." *Bilateral*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/bilateral (last visited July 15, 2025). Yet, Herod insists that "a collective action **is** a bilateral proceeding." Dkt. 72 at 26. Herod contends that "in a collective action, Herod and every individual who submits a written consent to join is an individual party to the proceeding litigating their individual FLSA claims **bilaterally** with DMS." *Id.* at 27. That is true, but there are still more than two parties to a collective action, which is the antithesis of ***bi****lateral*.

Herod attempts to distinguish DMS's contrary authority on the basis that "they either included enforceable collective action waivers or otherwise discussed 'class' arbitration as opposed to FLSA collective action arbitration." *Id*. If that is a basis for distinguishing case law, then it is curious indeed that the cases Herod cites for the unremarkable and irrelevant proposition that "[a] collective action is fundamentally distinct from a representative action or a class action" do not even use the word "bilateral," much less endeavor to discuss the distinction between bilateral and collective proceedings. *Id.* (first citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); then citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). In any event, there is just no getting around the fact that "bilateral" means "two."

If even one plaintiff signs on to Herod's collective arbitration, there will necessarily be more than two parties. There will be at least two plaintiffs and one

defendant. Two plaintiffs + one defendant = three parties. Three is more than two. It is for this reason that the United States Supreme Court has consistently used "the phrase 'bilateral arbitration' *in opposition to* 'class *or collective*' arbitration." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 658 (2022) (emphasis added). A collective action is not a bilateral action.

In a vain attempt to contend with *Viking River*, Herod cherry-picks a quotation, arguing that "[w]hile courts sometimes use 'bilateral arbitration' to distinguish it from class or collective arbitration, the Supreme Court itself recognized 'a proceeding in which two and only two parties arbitrate exclusively in their individual capacities is not the only thing one might mean by "bilateral arbitration."'" Dkt. 72 at 28 (quoting *Viking River*, 596 U.S. at 657). The phrase "exclusively in their individual capacities" is doing all the heavy lifting in that sentence. *Id.* The Supreme Court went on to clarify that "bilateral" also includes "single-principal, single-agent representative actions" as well as parties that "arbitrate exclusively in their individual capacities." *Viking River*, 596 U.S. at 657–58. But at no point has the Supreme Court ever suggested that "bilateral" includes more than two parties. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524 (2018) (wondering why the Supreme Court "should read the NLRA as mandating the availability of class *or collective actions* when the FLSA expressly authorizes them *yet allows parties to contract for bilateral arbitration instead*" (emphasis added)). Lower courts that have addressed "bilateral arbitration" alongside "collective arbitration" have also drawn a clear distinction between the two.[1]

---

[1] *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 691 (9th Cir. 2024) (VanDyke, J., concurring) ("The FAA's objective is to ensure the enforcement of arbitration agreements, which Congress in 1925 understood to be bilateral in nature, not collective." (quotation omitted)); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 509 (7th Cir. 2018) ("Because of their distinct structure, class and collective arbitration require procedural rigor that bilateral arbitrations do not."); *Artis v. Lyon Shipyard, Inc.*, No. 2:17-cv-595, 2018 WL 11508932, at *1 (E.D. Va. Oct. 11, 2018) ("Plaintiffs fail to demonstrate that this Court should intervene to modify the default starting place from traditional 'bilateral' arbitration to a Court-ordered 'collective' proceeding."); *Herzfeld v. 1416 Chancellor, Inc.*, No. 14-4966, 2015 WL 4480829, at *8 (E.D. Pa. July 22, 2015), *aff'd*, 666 F. App'x 124

Between this mountain of authority and the plain language of the parties' agreement, the import of my November 25, 2024 order is clear.

DMS's request for clarification (Dkt. 71) is granted. When I found that the parties agreed to arbitrate and compelled arbitration, I necessarily found that the parties agreed, and were thus compelled, only to bilateral arbitration. This case remains stayed and administratively closed pending bilateral arbitration.[2]

SIGNED on this 15th day of July 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

(3d Cir. 2016) ("We conclude the 2013 Agreement does not expressly or implicitly evidence an agreement for collective or class arbitration. The 2013 Agreement refers only to arbitration affecting 'both parties.'"); *Gonzales v. Brand Energy & Infrastructure Servs., Inc.*, No. 4:12-cv-1718, 2013 WL 1188136, at *5 (S.D. Tex. Mar. 20, 2013) ("The court has already concluded that the parties agreed to arbitrate this dispute; the arbitrator will decide what 'kind of arbitration proceeding'—i.e., a bilateral arbitration or a collective or class arbitration-the parties agreed to.").

[2] I am not issuing a judgment, modifying relief, or resolving a merits issue. I am simply clarifying an existing order that remains binding. Because this case is administratively closed but not dismissed, no formal reopening is necessary to clarify the prior order compelling arbitration. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 (5th Cir. 2002) ("[A]dministrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance."); *Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 128 (3d Cir. 2004) ("[A]n order merely directing that a case be marked closed constitutes an administrative closing that has no legal consequence other than to remove that case from the district court's active docket.").

4